IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CORY C. SMITH, ) | CASE NO. 1:21CV2024 |
| ) | |
| Petitioner, ) | JUDGE JOHN ADAMS |
| ) | |
| vs. ) | MAGISTRATE JUDGE |
| ) | CARMEN E. HENDERSON |
| WARDEN DOUGLAS FENDER ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent, ) | |
| ) | |

This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to 28 U.S.C. Section 636(b), Fed. R. Civ. P. 72, and LR. 72.1, and for general pretrial supervision pursuant to Local Rule 72.2(a).

On October 26, 2021, Petitioner Cory C. Smith ("Petitioner" or "Smith") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting a singular Ground for Relief to challenge his 2019 convictions for possession of drugs and assault on a police officer. On April 8, 2022, Respondent Warden Douglas Fender ("Respondent") filed the Return of the Writ (ECF No. 8), and Petitioner filed his Traverse (ECF No. 14) on October 9, 2022.

## I. Background

### A. Trial Court Proceedings

On August 3, 2017, Petitioner was indicted in Belmont County for two counts of possession of drugs and two counts of assault on a peace officer. Petitioner pled not guilty, and the matter proceeded to jury trial on February 21, 2019. Following the presentation of evidence from both the prosecution and defense, Petitioner was found guilty of one count of drug

1

possession and both counts of assault on a police officer. The state appellate court detailed the events of trial as follows:[1]

> The State presented three witnesses: Deputies Jason Schwarck and Brian Carpenter, with the Belmont County Sheriff's Department; and Patrolman Henry Sam Martin, with the Bellaire Police Department.
>
> At around 11:00 p.m. on June 14, 2017, Deputy Schwarck stopped Tabitha Burch's car due to a vehicle defect and a traffic violation, i.e., no license plate light and failure to use a turn signal. (2/21/19 Jury Trial T.p. 190). Burch was the driver, Shermika Griffin was the front seat passenger, and Appellant was the backseat, driver's side passenger. It "caught [Deputy Schwarck's] attention" when he first observed Appellant with "his arm laying over his leg in between his two legs in the backseat, which was an uncommon place for his arm to be laying straight down in between his legs[.]" (T.p. 191). Appellant's positioning drew Deputy Schwarck's attention down to the area of Appellant's crotch, where he saw a "bulge." (T.p. 200).
>
> Deputy Carpenter and Patrolman Martin arrived at the scene for back-up assistance. Deputy Carpenter testified that Appellant's body language was "dramatically different" than the two front passengers, who appeared "normal" and not "too nervous." (T.p. 268-269). Appellant exhibited "very - - suspicious-looking behavior." (T.p. 269). Deputy Carpenter explained "[n]ot Appellant's physical appearance, but the way he presented himself, the rigidness, his arm between his legs." (T.p. 270). "[Appellant] was soft spoken, didn't really want to have a conversation, and the fact that it looked like he was trying to conceal something." (Id.). Deputy Carpenter also "saw a bulge * * * kind of his lower waistband." (Id.).
>
> At that point, Deputy Schwarck deployed his K-9 and the occupants were asked to step out of the vehicle. Deputies Schwarck and Carpenter believed Appellant needed to be patted down for a weapons check. Appellant refused. Deputy Carpenter told Appellant to put his hands on the back of the car and the officers patted him down. Deputies Schwarck and Carpenter felt something in Appellant's crotch/waistband area. Deputy Carpenter described that it felt "firm," about "the size of a baseball." (T.p. 274). Deputy Carpenter could hear something "crinkling," like "a plastic baggy-type object." (Id.). Based on his training and experience, Deputy Carpenter "felt overly confident that it was narcotics" and he knew "it was a lot of it." (Id.).

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

2

> The officers advised Appellant that he was being detained. Deputy Carpenter put Appellant's right hand in a handcuff and then Appellant "began to pull away, tense up, and eventually tried to run." (T.p. 202). Patrolman Martin described Appellant as "feisty" and "started to resist." (T.p. 247-248). A struggle ensued and the officers and Appellant ended up on the ground slightly underneath the car. While trying to control Appellant's legs, Patrolman Martin was struck several times.
> Deputy Carpenter further testified that Appellant's right arm was under the vehicle. Deputy Schwarck indicated that Appellant tossed something underneath, toward the front of the car, which turned out to be one large bag with multiple bags of cocaine inside. The total amount was 24.6 grams of cocaine. (T.p. 356-357). Appellant bit Deputy Schwarck's hand before the officer was able to get the handcuff on Appellant's other hand.
>
> At the close of the State's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.
>
> Appellant presented one witness: Griffin, a good friend of Appellant's and the front seat passenger. Griffin has struggled with drug addiction over the years. On the night at issue, she and Burch were on their way to purchase drugs and later ended up smoking crack cocaine in the car. While driving, they saw Appellant walking down the street and picked him up. After Burch's vehicle was stopped by police, Griffin and Burch were told to exit and stand in front of the car, while Appellant exited and stood in the back. Griffin claimed that officers were "attacking" Appellant. (T.p. 401). On cross-examination, Griffin testified she did not throw anything under the vehicle and did not see Burch throw anything under the vehicle.
>
> The jury found Appellant guilty of counts one (possession of drugs, cocaine, in excess of 20 grams but less than 27 grams), three (assault upon a peace officer, Deputy Schwarck), and four (assault upon a peace officer, Patrolman Martin).
>
> On March 21, 2019, the trial court sentenced Appellant to eight years on count one and 18 months each on counts three and four. The court ordered the sentences be served consecutively for a total of 11 years, with 111 days credit for time served.

*State v. Smith*, 2020-Ohio-760, ¶¶ 4-13.

### B. Direct Appeal

Petitioner through counsel, filed a timely notice of appeal to the Seventh District Court of Appeals. Petitioner asserted the following assignments of error:

I. The Defendant's sentence was Contrary to Law.

3

> II. The State presented insufficient evidence to convict Appellant of possession drugs and assault on a police officer.
>
> III. Defendant-Appellant's convictions were against the manifest weight of the evidence.
>
> IV. Defendant-Appellant's constitutional rights to due process and a fair trial

(ECF No. 8-1 at 22-23). The State sought leave to file an untimely appellee brief, but the request was ultimately denied. On February 26, 2020, the appellate court affirmed the trial court in all aspects.

On July 28, 2020, Smith, *pro se*, appealed to the Supreme Court of Ohio[2] raising the following proposition of law:

> The Fourth Amendment prohibition against unreasonable searches and seizures is violated where law enforcement creates phony circumstances to justify reasonable suspicion and/or probable cause.

(ECF No. 8-1, Ex. 17). On October 27, 2020, The Supreme Court of Ohio declined to accept jurisdiction of the appeal. (ECF No. 8-1, Ex. 18).

### C. Federal Habeas

Smith, *pro se*, filed this federal habeas petition on October 26, 2021 and raised the following ground for relief:

> GROUND ONE: Mr. Smith received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress based on a pretextual justification for the illegal search and seizure of his person.

## II. Legal Analysis

---

[2] Smith included a "motion for leave to file out of rule due to COVID 19 Emergency" with his notice of appeal that was granted on August 10, 2020 (ECF No. 8-1, Ex. 16).

The Warden has asserted that Smith procedurally defaulted his sole claim. The Warden has also asserted that even if the claim were not defaulted, it lacks merit. Both contentions are reviewed below.

**A. Procedural Default**

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams vv. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To avoid procedural default, Smith's ineffective assistance of counsel claim must have been fairly presented in the state courts and presented on a specific alleged ineffective action by counsel. *Caver v. Straub*, 349 F.3d 340, 347 (6th Cir. 2003). Smith first raised his ineffective assistance of counsel claim on direct appeal. (ECF No. 8-1, Ex. 9). Contrary to the Warden's position, Smith adequately pled such a claim in his memorandum of support of jurisdiction to the Ohio Supreme Court.

The Supreme Court has held that the "fairly presented" requirement does not require extensive elaboration: "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim ... by citing in conjunction with the claim the federal source of law on which he relies ... or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32

5

(2004). Although the threshold is low, the Sixth Circuit explains that a single general reference to the Constitution is insufficient to fairly present a federal claim to state courts. *Slaughter v. Parker*, 450 F.3d 224 (6th Cir. 2006) ("While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.") (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (internal citations omitted as in original); *Beach v. Moore*, 343 F. App'x 7, 11-12 (6th Cir. 2009) (holding that petitioner's references to due process and the Fifth, Sixth, and Fourteenth Amendments in his state court brief were "precisely the type of general allegations that [this court] ha[s] found do not fairly present the substance of a federal claim to a state court" (internal quotation marks omitted)). In reviewing the state court proceedings to determine whether a petitioner has "fairly presented" a claim to the state courts, this Court considers the petitioner's "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005); *Gonzales v. Wolfe*, 290 F. App'x 799, 810 (6th Cir. 2008).

Applying this test to Smith's case leads to the conclusion that Smith fairly presented his federal claims to the state courts. Although Smith's proposition of law sounded in the Fourth Amendment, his memorandum included the following:

> This appellant specifically maintains that his 6th and 14th amendment right to have the effective assistance of counsel was violated because counsel failed to file a motion to suppress.
>
> In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the criteria by which ineffective assistance of counsel claims are

6

> raised. First, a defendant must demonstrate that counsel rendered a deficient performance. Second, the defendant must demonstrate that but for counsel's deficient performance, there is a reasonable likelihood the outcome of the appeal would have differed. *Id*.

(ECF No. 8-1, Ex. 14). Smith detailed the nature of his claim as federal, cited to the *Strickland* standard, and detailed the alleged deficient conduct – that being his counsel's failure to file a motion to suppress. Accordingly, he fairly presented his claim to the Ohio Supreme Court and has not procedurally defaulted such claim.

**B. Merits Review**

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the contrary to clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the unreasonable application clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness

7

of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

Claims of ineffective assistance of counsel are reviewed according to *Strickland*'s two-pronged test. *Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 736, 178 L. Ed. 2d 649 (2011) (citing *Knowles v. Mirzayance,* 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251. Pp. 739 – 740). "*Strickland* requires a defendant to establish deficient performance and prejudice." *Knowles*, 556 U.S. at 124. In order to succeed on a claim of ineffective assistance of counsel, a

petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermined the reliability of the defendant's convictions. *Strickland*, 466 U.S. at 687; *McMeans*, 228 F.3d at 682.

In resolving Smith's claim for ineffective assistance of counsel on its merits, the state appellate court reasoned as follows:

> Appellant insists that his trial attorney should have filed a motion to suppress because the stop was not valid. However, Deputy Schwarck testified at the jury trial that he stopped Burch's car, in which Appellant was a passenger, due to a vehicle defect and a traffic violation, i.e., no license plate light and failure to use a turn signal. (2/21/19 Jury Trial T.p. 190). Thus, the stop was valid. *See State v. McMillon*, 7th Dist. Columbiana No. 18 CO 0016, 2019-Ohio-2716, ¶ 11, citing *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 35, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("There are two types of valid traffic stops: (1) where police have probable cause that a traffic violation has occurred or was occurring and (2) where police have reasonable articulable suspicion that criminal activity has occurred.)
>
> In addition, Appellant insists that his trial attorney should have filed a motion to suppress because the search and seizure were not valid. However, as stated, Deputies Schwarck and Carpenter testified that Appellant acted differently than his front seat counterparts. Appellant sat in a suspicious manner with his arm between his legs as if trying to conceal something. The officers saw a "bulge" near Appellant's crotch/lower waistband area.
>
> Deputies Schwarck and Carpenter believed Appellant needed to be patted down for a weapons check. Appellant refused. Deputy Carpenter told Appellant to put his hands on the back of the car and the officers patted him down. The officers felt something in Appellant's crotch/waistband area. Deputy Carpenter believed it was narcotics. He put Appellant's right hand in a handcuff and then Appellant "began to pull away, tense up, and eventually tried to run." (T.p. 202).
>
> A struggle ensued and the officers and Appellant ended up on the ground partially underneath the car. While trying to control Appellant's legs, Patrolman Martin was struck several times. Deputy Schwarck indicated that Appellant tossed something underneath, toward the front of the car, which turned out to be one large bag with multiple bags of cocaine inside. Appellant bit Deputy Schwarck's hand before the officer was able to get the handcuff on Appellant's other hand.
>
> Based on the facts presented, the search and seizure were valid. *See State v. Hughley*, 7th Dist. Mahoning No. 09 MA 200, 2010-Ohio-6010, ¶ 10, citing *Terry*

9

> *v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868 (1968) ("[A]n officer is authorized to perform a limited pat-down search for weapons as a safety precaution if there is a reasonable suspicion that the person stopped may be armed and dangerous"); *State v. McCoy*, 6th Dist. Lucas No. L-97-1393, 1998 WL 526734, *2 (Aug. 21, 1998), citing U.S. v. Craft (C.A.8 1994), 30 F.3d 1044, 1045 (drug seizure valid during pat down search when incriminating character immediately apparent by touch); *U.S. v. Ashley* (D.C.Cir.1994), 37 F.3d 678, 680-682 (drugs felt during pat down search valid because immediately apparent to experienced officer).
>
> Accordingly, a motion to suppress would not have been successful and Appellant can show no prejudice in trial counsel's tactical decision not to file one. Pursuant to *Strickland, supra*, Appellant fails to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense.

*State v. Smith*, 2020-Ohio-760, ¶¶ 45-50.

Smith does not assert that the state court's analysis was contrary to any existing precedent, so his ineffective assistance of counsel claim solely focuses on his belief that the State's application of the *Strickland* standard was unreasonable. There is no merit to this argument.

When evaluated under the AEDPA, a federal habeas court's review of an ineffective assistance of counsel or *Strickland* claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Because the standards created by *Strickland* and AEDPA are both highly deferential, when the two apply in tandem, review is doubly so. *Harrington*, 562 U.S. at 105. Accordingly, under the AEDPA the question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Furthermore, the question is not whether defense counsel's actions were reasonable, the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Harrington*, 562 U.S. at 105. Moreover, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a

10

defendant has not satisfied that standard. *See, Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Police officers may initiate an investigatory detention only if they have reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). An officer must be able to point to specific and articulable facts, together with rational inferences drawn from those facts, that reasonably suggest criminal activity has occurred or is imminent. Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring "articulable reasons" and "a particularized and objective basis for suspecting the particular person ... of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

As detailed above, the state appellate court recounted the observations of the two deputies that observed Smith before he was removed from the vehicle and patted down. Both noted that Smith's demeanor differed from the other passengers in the vehicle and that the placement of his arm strongly suggested that he was attempting to hide something from the officers. Officers also noted a bulge in Smith's pants roughly the size of a baseball. The bulge in Smith's pants, standing alone, may have been enough to frisk him. *See United States v. Hardeman*, No. 19-20283, 2019 WL 5597141, at *1 (E.D. Mich. Oct. 30, 2019) ("Observing a bulge is sufficient to satisfy reasonable suspicion that Hardeman was armed"); *United States v. Stennis*, 457 F. App'x 494, 499 (6th Cir. 2012) ("The officer's perception of a bulge suspected to be a weapon provides reasonable suspicion that the individual may be armed and dangerous"). Officers, here, also had the unusual placement of Smith's arm: "[b]ending or leaning tends to be more suspicious when accompanied by some other indication of an attempt to conceal

11

contraband or to reach for a weapon, such as arm movements or the sound of an item being moved[.]" *United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006) (overruled on other grounds). These two facts together provided reasonable suspicion to frisk Smith. Thus, the state appellate court's finding that a motion to suppress would not have been successful and that Smith failed to demonstrate prejudice was not an unreasonable application of *Strickland*. As a result, Smith's sole ground for relief is meritless and should be denied.

### III. Certificate of Appealability
#### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

#### B. Analysis

Smith's sole ground for relief is meritless. If the Court accepts the foregoing recommendation, then Smith has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## IV. Recommendation

Smith's sole ground for relief is meritless. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: February 9, 2024

                                             *s/Carmen E. Henderson*
                                             Carmen E. Henderson
                                             United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).